MANSUR-TEBBETTS IMPLEMENT CO. VS CAREY & MOORE.

Opinion delivered April 2, 1898.

*1. Pledge of Promissory note as Collateral—Duty of Pledgee to use Diligence in Collecting.*

When a debtor pledged notes of solvent persons as collateral security to an indebtedness due his creditor and which at the time could have been collected at their maturity by reasonable diligence on the part of the pledgee, but which became uncollectible while in the hands of the pledgee by reason of the insolvency of the maker, the pledgor can recover from the pledgee the amount of the uncollected collateral in the absence of any showing of diligence in the collection of same on the part of the pledgee.

*2. Pledge of Promissory Note—Pledgee Held Liable to Account for same.*

In an action on a note the holder is required to produce and account for collateral, pledged as security and if he fails to do so he will be chargeable with the face value of the collateral.

*3. Collateral—Right of Pledgee to Charge Expense of Collection.*

In the absence of a contract a pledgee can not charge fees or commissions for his personal services in the collection of collateral and he can not charge attorneys fees and expenses unless he actually incurs such attorneys fees and expenses.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Suit by Mansur-Tebbetts Implement Co. against Carey & Moore. Judgment for defendants. Plaintiffs appeals. Affirmed.

This is an action for the recovery of six certain promissory notes, the principal of which aggregates $3,781.-2, all past due. The answer admits the execution of the notes sued on, but alleges—First, that the defendants are entitled to credit in the sum of $143.85, for hauling certain freight for the use of plaintiff; and, second, that at the time of the execution of the notes sued on, and as a part of the same transaction, and as collateral to secure the payment of the same, the defendants indorsed to plaintiff various other promissory notes, executed to them by their customers, aggregating the sum of $4,832; that a great majority of these collateral notes were secured by chattel mortgages upon sufficient property to secure their payment; and that those which were not so secured were all executed by persons who were then solvent and possessed of sufficient property out of which the notes could be collected; that the plaintiff agreed with the defendants to use reasonable diligence in collecting the said notes, and also agreed that the defendants should have the right to assist in their collection; that plaintiff has denied them that right; that all of said collateral notes are long since past due, and, by the exercise of reasonable diligence on the part of plaintiff, could and would have been collected; that defendants have no knowledge as to how much has been collected, but charge that plaintiff has collected the whole amount, and appropriated it to their own use, whereby plaintiff has become liable to de-

fendants for the full value of the said collateral notes, to wit, $4,832, which sum defendants plead over against plain tiff's claim, and pray judgment for the difference. To the answer a replication was filed, denying the the charge for freight. Plaintiff admitted that, at the time the suit was instituted' it held certain notes of customers of defendant as collateral security for the notes sued on, but denied that said notes were against solvent parties, or that they amounted to the sum claimed by defendants' answer, or that they could, by the exercise of reasonable diligence, have been collected. Plaintiff denied that most of said collateral notes were secured by mortgages, but admitted that they were all past due, but averred that the most of said notes were not secured at all, and many of them were against "insolvent, reckless persons, who have left the Indian Territory." Plaintiff averred that since the institution of this suit, at great cost and expense to itself, it has collected of the said collateral notes, and has given credit on the notes sued on, the sum of $2,945.14. Upon the issues thus presented, the case was tried, resulting in a verdict for the defendants for the sum of $600, and judgment was by the court accordingly rendered. Motion for new trial was filed and overruled. No exceptions were saved to the charge of the court.

*C. L. Herbert, Yancy Lewis.* and *Jesse Hill* for appellant

*Johnson, Cruce & Cruce,* for appellees.

CLAYTON, J. (after stating the facts). There were eight errors assigned. The first to the fourth, inclusive, all go to the sufficiency of the evidence to support the verdict and the judgment of the court. The fifth and seventh were waived by the plaintiff. The sixth is as follows: "The court erred in refusing to permit the plaintiff to prove by

he testimony of the defendant J. H. Carey and the testimony of J. C. Thompson, A. C. Cruce, and W. I. Cruce, attorneys of the Ardmore bar, that ten per centum of the amount of the collateral notes collected by the plaintiff was reasonable compensation for collecting the same." The eighth assignment is "that the court erred in overruling the plaintiff's motion for a new trial, in that all the errors above mentioned were embraced in said motion, and called to the attention of the trial court." From an inspection of these assignments, it will be seen that only two questions are presented to the court for its consideration, to wit: (1) Was the evidence sufficient to support the verdict and judgment? (2) Did the court err in refusing to admit the evidence set out in the sixth assignment?

As to the sufficiency of the evidence: The face value of the notes in the suit is $3,781.62. The face value of the collateral notes is $4,832, the difference being $1,050.38. All of the notes draw the same rate of interest from maturity, and were due about the same time. The law charges the defendants with interest on the principal note, and charges the plaintiff with all the interest collected by it on the collateral notes, together with that which, but for the negligence of the plaintiff, could have been collected on the uncollected collateral notes. On the trial, the plaintiff produced in court uncollected collateral notes of the face value, without interest, of $1,219.18, leaving a balance of $3,612.82. As to this last amount, there is no proof but that it was all collected by the plaintiff, with whatever interest there may have been due upon it, and none of the notes covering this amount were produced at the trial, nor any explanation given for their nonproduction. Under these circumstances, the law requires that this amount shall be credited to the payment of the principal note. Coleb. Collat. Sec. §§ 106, 2. And inasmuch as these notes were drawing interest at the same rate, and were due at the same time as the prin-

cipal notes, this credit would satisfy that note, with interest
to that extent.    Crediting the principal note, to wit, $3,781.
62, with the above amount, $3,612.82, and we have a balanc
due plaintiff of $168.80.    The proof establishes, and it seem
to be conceded by plaintiff's counsel, that the freight charge
set up in the answer, of $143.85, should be allowed defend
ants.    Deducting this from the above leaves the sum of $24.
95 due plaintiff.    But the pleadings of the defendants alleg
"that all of the said collateral notes, by the use of prope
diligence on the part of plaintiff, could have been collected
that the great majority of them were secured by chatte
mortgages upon sufficient property to secure their paymen
and that those which were not so secured were each owin
by parties who were solvent, and were possessed of sufficien
property, subject to execution, to enforce the payment of th
same;   *   *   *   that, by reason of plaintiff's negligence
carelessness, and mismanagement in collecting and handlin
said notes, they became worthless, and plaintiff becam
liable to them in the full amount."    The replication deni
these allegations, but admits that plaintiff forbade the d
fendants having anything to do with their collection.    A
the trial, the plaintiff introduced in evidence the princip
notes, and rested its case.    The defendants, properly takin
the burden of proof, introduced testimony tending strong

**Pledgee of Collateral must use diligence in collecting.**
to show that, with the exception of about $175, all of th
collateral notes, when turned over to plaintiff, were
solvent parties, or sufficiently secured by mortgage, an
with proper diligence on the part of the plaintiff, could hav
been collected at their maturity, and that for a long tim
thereafter the makers of said notes were solvent; that of th
notes produced by plaintiff at the trial, with the exception
perhaps about $400, all were worthless, the makers there
having, since the maturity of the notes, become insolven
The plaintiff offered no rebutting proof as to its diligence
their collection. Under these circumstances, with the exce

on of the notes covering the $175 and the $400, above set
ut, the plaintiff clearly became liable for the balance of the
ncollected collaterals.   Coleb. Collat. Sec. § § 105—142.
aking these amounts, to wit:  Due plaintiff on principal
te, $24.95; notes not good at time of delivery, $179; notes
od, produced by plaintiff at trial, $400,—$603.95,—from
e face vaiue of the collaterals produced by plaintiff, to wit,
,219.18, and there would be a balance due to defendants of
15.23.    The verdict of the jury was $600.     In the
ove calculation, interest on the collateral notes produced
 the trial, and which could have been collected by plaintiff
 proper diligence, is not included.

The evidence, we think, was amply sufficient to sup-
rt the verdict and judgment, unless the court erred in ex-
iding ·the testimony set out in the sixth assignment of
or.  The plaintiff undertook to get a credit on ac-
int of expenses and services in collecting the collater-
notes.  We think that it was clearly entitled to credit
· any and all necessary expenses incurred in making
ese collections, including attorneys' fees, if attorneys
re necessarily employed.  To establish this claim, the
intiff offered to prove by a number of attorneys of the
dmore bar "that a reasonable compensation for the col-
tion of the collateral notes turned over by the defendants
the plaintiff would be 10 per centum of the amount col-
ted on such collateral."  To the introduction of this evi-
ce, defendants objected.  Objection sustained, and ex-·
tion saved.  There was some proof that a few of these
es were put into the hands of a lawyer by the name of
ley·(who seems to have left the country without having
omplished a great deal in the way of collecting them).
w much he actually collected, if any, or that he was at
 expense in the matter, is not shown.  With this ex-
tion, there is no evidence of any cost incurred by plain-

tiff in connection with these collateral notes, or that the service of any lawyer was had. The law does not permit a pledgee to charge attorney's fees or commissions for his personal service in the collection of collaterals, unless that was the contract between the parties. No such contract is here shown. As above stated, without a special contract he can only be allowed his actual expenses for the collection; and, as none were proved, we think the court did no err in excluding the evidence of the attorneys, to the effec that a reasonable compensation for the collection of thes notes was 10 per cent. Finding no error in the proceeding of the court below, the judgment is affirmed.

SPRINGER, C. J., and THOMAS and TOWNSEND, JJ concur.

*Margin note: Right of Pledgee to expenses for collecting collateral.*